WOODRUFF, by next friend, *vs.* THE ALABAMA GREAT SOUTHERN RAILROAD.

Where an employé of a foreign railroad company brought suit in this state on account of an injury received in the state where the railroad was chartered, although the evidence may have made a very weak case, yet there was possibly enough evidence, if uncontradicted, to enable the jury to say that the injury was occasioned by the defective machinery of the company, and where the law which should determine the plaintiff's right was somewhat uncertain, and it was doubtful whether, under the common law, which was of force in the state where the casualty occurred, he sustained the relation of co-employé to the company's agent, whose negligence caused the damage, the case should have been allowed to go to the jury, and the non-suit was error

February 9, 1856.

Railroads.    Damages.    Negligence.    Non-suit.    Laws. Before Judge MARSHALL J. CLARKE.    City Court of Atlanta.    June Term. 1885.

William L. Woodruff, a minor, by his next friend, Joseph P. Woodruff, brought suit against the Alabama Great Southern Railroad Company for a personal injury, alleged to have been received by him through the negligence of the defendant, without fault on his part, while engaged as a brakeman on the defendant's railroad in Alabama    Joseph P. Woodruff, the father, also brought suit for the loss of his son's services.    The latter case was tried with the former by consent.

On the trial, the evidence for the plaintiff was, in brief, as follows :

*Joseph P. Woodruff* testified : His son was eighteen years of age when hurt.    He left his father's home in Atlanta, and

the latter did not know where he was until he heard of the injury. He had never given his consent to his son's receiving his own wages, but he had always collected them himself before the son left. He did not consent to his employment by the defendant, and did not know of it. It was a dangerous business. For a while before, he had run with his father as a brakeman.

*William L. Woodruff* testified : He left home without his father's knowledge or consent, and went to Birmingham, Alabama. He asked the conductor on an ore-train if he did not wish to employ him. The latter said he would see, and went to see about it; he saw the agent, and that afternoon employed the plaintiff at $1.80 per day. The plaintiff dealt with no other person than the conductor, and the latter could discharge as well as employ him. He had been working on this ore-train, hauling ore between Birmingham and certain mines for twelve or fifteen days, when he was hurt. The ore cars have steep, slan ing ends, with a trap-door at the bottom, which is worked by a crank and chains. At a place near the mines, known as Potter's, the ore-train went on a side-track to allow the passenger train to pass. After it did so, the conductor instructed the plaintiff to change the switch and get on the cars and set the brakes, and said that he would give the cars a start, or "kick" backward, and let them roll. The plaintiff changed the switch and got on the car, set one brake and started to set another. He passed along a sill about eight inches wide. This was the only way to get from one car to the other, and was the proper way. The conductor gave a signal to a negro brakeman at the front of the train to cut the engine loose. A drag-bar became hung in the draw-head of the engine, causing a sudden jerk and throwing the plaintiff off in the middle of the track, where a number of cars passed over him, injuring him (the distance of the ore cars above the track being about three feet), and an open trap-door in one of the cars struck him, breaking his leg. The drag-bar was too large for the draw-head. The plaintiff

knew that the door was down, but it was not his place to keep it up, and he had no crank to keep it up with. The men employed by another company at the ore chutes put them up. He was not at fault, so far as he knew.

On cross-examination, he stated that he knew the jerk was caused by the drag-bar being caught in the draw-head, because the jerk could not have been produced in any other way. He did not see it, and could not swear absolutely that it did so. He did not see the engine cut loose, but when he got from under the cars, the engine was on a different track, and besides, the cars could have been stopped quicker than they were if the engine had been attached. The other brakemen and employés were old men in their places, and good men in the business, so far as he knew. He had been about the engine several times; knew that the drag-bar had been taken off and put back several days before the injury, but did not know there was any fault in it. He had been employed altogether as a brakeman about three years. It was raining some that afternoon, and the plaintiff had on a new pair of boots. The cars were good, so far as he knew.

There was other evidence as to the extent of the injury, the loss of time, etc., and as to a settlement claimed by the defendant, which need not be set out in detail. The tables of life expectancy were also introduced.

On motion, the court granted a non-suit, and the plaintiff excepted

HOPKINS & GLENN, for plaintiff in error, cited, on master's duty to furnish proper machinery, 100 U. S., 213; 67 Ala., 13. Minor employed in dangerous business, Wood's Master and Servant, §§5, 8, 137; 24 Ala., 622; 4 Eng. & Am. R. R. Cases., 528.

JULIUS L. BROWN; W. D. ELLIS, for defendant, cited on law of Alabama contracts, 43 *Ga.*, 461; 49 *Id.*, 106. Injury to fellow-servant, liability of master for, 15 *Ga.*, 349;

30 *Id.*, 146; 1 *Id.*, 195; 24 Ala., 21; 42 *Id.*, 672; 59 *Id.*, 245; 61 *Id.*, 554; 67 *Id.*, 206, 13; 70 *Ga.*, 566; 68 *Id.*, 699; 61 Ala., 376; 15 *Ga.*, 349; 74 *Id.*, 396.

HALL, Justice.

Without doubt, this record does not make a strong case for the recovery of damages in consequence of the negligence of the defendant; indeed, it is a very weak case, but as there is possibly enough in the evidence to enable the jury to say, if it is uncontradicted, that the injury was occasioned by the defective machinery of the company, and as the law which is to determine the plaintiff's right is somewhat uncertain, the injury having been sustained in another state by the plaintiff, while acting as an employé of a railroad company chartered in that state, and as it is doubtful whether, under the common law, which obtained there at the time of the casualty, he sustained the relation of co-employé to the company's agent whose negligence caused the damage, we think it better that the case should have gone to the jury than to have been non-suited. Such, at least, has, for a long time, been the settled practice of our courts, and because the casualty happened in another jurisdiction, this is not a sufficient reason to justify a change in our modes of trial and procedure. With these differences in regard to plaintiff's relation to defendant and the place of the occurrence, this case is within *Fraser et al. vs. Charleston and Savannah Railway Company,* determined at this term. While the rule referred to does not commend itself to our judgment, and while we would greatly prefer seeing it modified, and always feel reluctant when called upon to enforce it, yet it has been too long and too firmly established to justify any departure from it, and we are constrained to yield it obedience, and to declare that the non-suit should not have been awarded, and must order the judgment reversed.